UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

YUDY HERNANDEZ,                                    CASE NO.

      Plaintiff,

vs.

BUBBA GUMP SHRIMP CO. RESTAURANTS, INC.,
a Foreign Profit Corporation D/B/A BUBBA GUMP

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, YUDY HERNANDEZ, through undersigned counsel, sues Defendant, BUBBA GUMP SHRIMP CO. RESTAURANTS, INC., a foreign profit corporation d/b/a BUBBA GUMP (hereinafter referred to as "BUBBA GUMP"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)     This action is also brought pursuant to 28 C.F.R. Part 36.

2)     This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)     Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)     Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)     Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a meal.

7)     Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)     The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)     The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)    Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)    Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)    At all relevant times, Plaintiff is and was visually impaired and has rhegmatogenous retinal detachment of the right eye, proliferative vitreoretinopathy that developed as a complication of her rhegmatogenous retinal detachment and prevents the successful surgical repair of her retina, aphakia, band keratopathy, and ocular hypertension that substantially impairs Plaintiff's vision.

13)    Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing her environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)    In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting her civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

2

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to her visual disability and she requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with her use of a computer.

16)     Plaintiff uses the computer regularly, but due to her visual disability, Plaintiff cannot use her computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist her, Plaintiff uses ChomeVox screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because she is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, BUBBA GUMP, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, BUBBA GUMP, is a company that sells meals, t-shirts, caps, tumblers, ornaments, and plush toys. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "BUBBA GUMP".  The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.bubbagump.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing

4

information on its brand and other information that Defendant is interested in communicating to its customers about its physical locations.

24)      Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendant's retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendant's stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)      Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendant's physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)      Traveling outside of her home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendant's products, plan her visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)     During the month of March 2025, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate herself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in her capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as herself who use screen reader software to access and navigate company websites.

28)     Plaintiff utilized ChromeVox ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)     Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

Bubba Gump https://www.bubbagump.com/

System settings while doing the review:

Operating system: Windows 11

Browser: Google Chrome v. 132.0.6834.111

Screen Reader: NVDA v. 2024.4.2

Video Recorder: OBS Studio 31.0.1

**Summary of Accessibility Barriers**

Even though the Bubba Gump website utilizes AudioEye, key sections where transactions occur, such as the catering ordering platform (https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5) and the Gift Cards site (https://landrys.cashstar.com/), do not have this accessibility plugin in place. Additionally, AudioEye is not a comprehensive solution and does not offer robust personalization tools necessary to ensure full accessibility compliance. The presence of such a tool does not guarantee that the site meets WCAG standards, as significant barriers were identified throughout the site.

Key accessibility issues include:

1. Lack of Bypass Mechanisms (WCAG 2.4.1)

    The footer and cart sections lack bypass mechanisms, requiring users to navigate through all elements manually before accessing key content.

2. Keyboard Navigation Failures (WCAG 2.1.1)

    - The menu tab list is not operable via keyboard, preventing users from navigating between menu categories.

- Dropdowns for platter quantity selections lack visible focus indicators, making it difficult for keyboard users to determine their selection.

3. Focus Management Issues (WCAG 2.4.3, 2.4.7)

- The focus order skips critical content, such as menu items and list selections, making it difficult to navigate sequentially.

- After submitting forms or making selections, focus incorrectly jumps to unrelated sections, disrupting user flow.

4. Screen Reader Accessibility Failures (WCAG 1.3.1, 4.1.2)

- The carousel on the homepage lacks descriptions for slides, images, and headings, making it inaccessible to screen reader users.

- The store locator does not provide context for store hours and phone numbers, making it unclear whether numbers represent contact details or hours of operation.

- Catering order details, such as the number of people a platter serves, are not announced when quantity selections change, preventing informed decision-making.

- No confirmation when items are added or removed from the cart, leaving users unaware of the success of their actions.

5. Error Identification and Form Issues (WCAG 3.3.1, 3.3.2)

- Delivery forms fail to provide clear error messages when invalid addresses, ZIP codes, or phone numbers are entered.

- The sign-in form does not announce errors when invalid emails are entered, preventing users from knowing how to correct their input.

- Radio buttons for shrimp and packaging options require arrow key navigation instead of tabbing, which is non-standard and creates usability challenges.

6. Transactional Barriers (WCAG 4.1.2, 3.2.2)

- Selecting tableware causes a page reload without informing users, forcing them to navigate back to their previous position.

- The tip selection modal does not provide feedback when a tip amount is selected, making it difficult for users to confirm their choices.

**Violation 1: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The screen reader does not provide any information about the slide content, such as image descriptions or heading text, making the carousel inaccessible to visually impaired users.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.bubbagump.com/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EdkFDSMv2H9IqBX4dCGf8CMBIG4PsdyX-E9Q28vT3l3kww

**Violation 2: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

The store information block fails to provide context for operational hours and phone numbers. The screen reader reads numbers without indicating whether they are business hours or phone contact details.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.bubbagump.com/store-locator/

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ERqoyVUdKAZIk42Rwl2s8J0B0m6jBUUcRE9YmFC1LqL5VA

**Violation 3: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

The focus order skips over menu tab list items and jumps to the next section of the page, disrupting navigation flow.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.bubbagump.com/location/bubba-gump-ft-lauderdale-fl/#menus

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ebf_KdEZLVNLl9Y4ecOWElMBJAG7YEe8j
Jm_IrR5zoFVHQ


**Violation 4: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web
pages

The footer lacks a bypass mechanism, forcing users to navigate through all footer
elements without an option to skip to the main content.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.bubbagump.com/location/bubba-gump-ft-lauderdale-fl/#menus

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EWSFxijCBaZKnZ_aZ96uywwBDxCGkRizD
lWXfgBdzLZobQ


**Violation 5: 2.1.1 Keyboard**

All functionality of the content is operable through a keyboard interface without requiring
specific timings for individual keystrokes, except where the underlying function requires
input that depends on the path of the user's movement and not just the endpoints.

The menu tab list is not operable via keyboard, preventing users from accessing or switching between different menu sections.

Applicable WCAG 2.1 Standard at Issue: 2.1.1 Keyboard (Level A)

URL Where Issue Was Encountered:

https://www.bubbagump.com/location/bubba-gump-ft-lauderdale-fl/#menus

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUQcghTeweFDoVNUEqnsUR4BrxKy1ltzc-ZxI1KHa7S4tg

**Violation 6: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not confirm when a user selects a date or time for catering orders, leaving users unsure if their selection was registered.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXtDWcg_pEpHpIydWu7PDAMBEKXz4I9uj V7BvMMrDeEQoA

**Violation 7: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not announce input confirmation for the guest count and event name fields, preventing users from knowing if their data has been recorded.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ed45RlFmlqpJhxpBVKUwOvMB6ljw_dSp-oS7V8GGqrun-Q

**Violation 8: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

The dropdown list for selecting quantities in the Grilled Chicken Sandwich Box Lunch modal lacks a visible focus indicator, making it difficult for keyboard users to determine their selection.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EeXQKE6mLiBNoZmpdjj8qHQBEm-

H0XDPYyuX2uEB5kwisw

**Violation 9: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and
components generated by scripts), the name and role can be programmatically
determined; states, properties, and values that can be set by the user can be
programmatically set; and notification of changes to these items is available to user
agents, including assistive technologies.

The screen reader does not confirm when an item has been successfully added to the cart,
leaving users uncertain about their purchase status.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-
29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-
5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EUukVlkBAtZLjeGzaa28QnkBBYihQ2JdgkK
sGnOQZX2XJA

**Violation 10: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

The platter quantity dropdown list in the BBQ Ribs & Shrimp modal does not have a visible focus indicator, making navigation unclear for users.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EZbK31HQyCJOgVZj-l02CYwBCIUhXenLOKWLejDIICfIMQ

**Violation 11: 1.3.1 Info and Relationships**

Information, structure, and relationships conveyed through presentation can be programmatically determined or are available in text.

When users change the platter quantity, the text updating the number of people served is not conveyed to the screen reader, leaving blind users unaware of portion information.

Applicable WCAG 2.1 Standard at Issue: 1.3.1 Info and Relationships (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-

29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-

5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ec9MFkmfHOFChkIr39K253IBLTJQ0D2Irj5l

Y_hCW7LcZw


**Violation 12: 3.3.2 Labels or Instructions**

Labels or instructions are provided when content requires user input.

The shrimp and packaging radio buttons do not function properly with the tab key; users

must use arrow keys instead, which is not standard keyboard navigation behavior and

users are not informed of this.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-

29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-

5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EW9m-

ibBF9pAq5nLMl46dCsBdumT4WmTt0jPdxeXBiRzIg


**Violation 13: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not confirm when the item is added to the cart, preventing users from knowing if their action was successful.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EeqQHz34S_ZHgdtJ_y86NRQBkAbxZScWvD0gzfUz0oI5Dg

**Violation 14: 2.4.3 Focus Order**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The focus order skips over all reviews in the catering reviews block, making it inaccessible to keyboard users.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/Ec1x--f1NsVJjYSySZMPjOsBExFBa2lMSBZkaISMjKyiSA

**Violation 15: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not confirm when an item is removed from the cart, leaving users unsure if their action was successful.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-

29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-

5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQVGgSLaha5Du_PIx-

In9bYBNajcj_xmD7fLhsfdMkB9mA

**Violation 16: 2.4.1 Bypass Blocks**

A mechanism is available to bypass blocks of content that are repeated on multiple Web

pages

After adding an item to the cart, there are no bypass mechanisms to skip menu sections,

reviews, or the footer, forcing users to navigate through unnecessary elements.

Applicable WCAG 2.1 Standard at Issue: 2.4.1 Bypass Blocks (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-

29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-

5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EQDm1G5iOR1JvCqeD0CKyGcBkJO6kYUK

T1bdecJMhSj1nw

**Violation 17: 2.4.3 Focus Order**

If a Web page can be navigated sequentially and the navigation sequences affect meaning or operation, focusable components receive focus in an order that preserves meaning and operability.

After submitting the Tableware selection modal, the focus incorrectly moves back to the main navigation menu instead of the cart.

Applicable WCAG 2.1 Standard at Issue: 2.4.3 Focus Order (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EVNpCa3EsiBPszTPZCyWNccBg3D5VjgWVk5Lxtik3egwmA


**Violation 18: 4.1.2 Name, Role, Value**

For all user interface components (including but not limited to: form elements, links and components generated by scripts), the name and role can be programmatically determined; states, properties, and values that can be set by the user can be programmatically set; and notification of changes to these items is available to user agents, including assistive technologies.

The screen reader does not confirm tip selections.

Applicable WCAG 2.1 Standard at Issue: 4.1.2 Name, Role, Value (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/catering/pvt/bubba-gump-shrimp-co-5/2025-01-

29?cartId=24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c&c=bubba-gump-shrimp-co-

5#Entree%20Platters

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EXF763Ta2-VAtXKuBxSwT4MBG4tCO9n-

Wvc5dNB0Dqdj-g


**Violation 19: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the

error is described to the user in text.

The delivery form does not provide error messages when users enter an invalid address,

ZIP code, or phone number, preventing them from understanding input errors.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/store/checkout/delivery/24e1e5f0-4a2f-4a26-b6af-

fd4943eb0d9c

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/ETuM5BGbZTRCrfDN4POzv8YBVUzpTF9r

UURQQV8BPkMz7w


**Violation 20: 2.4.7 Focus Visible**

Any keyboard operable user interface has a mode of operation where the keyboard focus

indicator is visible.

The "New or Returning Customer" checkboxes in the sign-in form lack visible focus indicators, making it unclear that focus is given to that section.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible (Level AA)

URL Where Issue Was Encountered:

https://www.ezcater.com/store/checkout/sign_in/24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EYGjZCa095FIrNX0wOKTUw0BrwwTuDG BtrmBOg6SuFOH7Q

**Violation 21: 3.3.1 Error Identification**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

The sign-in form does not provide clear error messages when an invalid email address is entered, preventing users from correcting mistakes.

Applicable WCAG 2.1 Standard at Issue: 3.3.1 Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.ezcater.com/store/checkout/sign_in/24e1e5f0-4a2f-4a26-b6af-fd4943eb0d9c#checkout-page-title

Screen Capture Evidence:

https://askbizit.sharepoint.com/:v:/s/ADA/EcwolfGWqRJLle1Pj6sBMjYBA_OCOBP2F P3jsoI1CMf3gg

30)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested,

still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although she attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable her to quickly, fully, and effectively navigate the Website.

31)    The fact that Plaintiff could not communicate with or within the Website left her feeling excluded, as she is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)    Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendant's physical stores and to use the Website, but she is presently unable to do so as she is unable to effectively communicate with Defendant, due to her severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Website due to her severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)    On information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)    On information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

40)     Defendant has not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendant has not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendant's products offered on the Website and in the physical stores from their homes.

44)     Defendant thus has not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendant is, and at all relevant times has been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendant is not required because of Defendant's failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent her in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations, purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical locations. Further, the Website also serves to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods,

services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in March and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendant thus has made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when

tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Mario Saavedra, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)     More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)     There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

65)     Defendant has violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)     The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R.§36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68)     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69)     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70)     As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71)     As a direct and proximate result of Defendant's failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendant's Website and its physical stores.

72)     Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73)     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.     Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendant's policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.     Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.     Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's stores and becoming informed of and purchasing Defendant's products, and during that time period prior to the Website's being

designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.     Plaintiff is entitled to recover her reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)     WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

a.     A declaration that Defendant's website is in violation of the ADA;

b.     An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.     An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear

---

[1]



display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing

Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.     An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.     An award to Plaintiff of her reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

**COUNT II – TRESPASS**

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)    Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)    Plaintiff never consented to and was unaware that Defendant's website was placing software on her computer.

77)    The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on her computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

   Cookies, Analytics, and Other Tracking Technology

   Cookies and Tracking Technology. When you access the website, we (and third-party companies we work with) may collect and store certain information by using technologies such as server logs, cookies, web beacons, clear gifs, tags, e-tags, flash cookies, log files, pixels, code, JavaScript packages, mobile advertising IDs (such as Facebook cookies or Google's Advertising ID), cross-device linking, and similar technologies.  The information collected includes information about your activities on our Sites, IP address, browser or operating system type and version, device IDs, and demographic or inferred-interest information, as well as information or communications you have submitted to us through the Sites.

We use this information to understand general usage and volume statistics, how users navigate to and around our Sites, what content is viewed or accessed, and which products and services have been obtained.  We also use these technologies to keep track of your preferences and profile information.  We also use these technologies to allow third parties to provide analytics and advertising services and serve advertisements on our behalf across the Internet and in mobile applications. For example, our advertising partners may use the fact that you visited our Site to target advertising to you on other websites and mobile apps on your current device or on other devices you use.  They may match your browsers or devices if you log into the same online service on multiple devices.  These third parties' partners may use this information for our and their own advertising, analytics, attribution, and reporting purposes.  To learn more about interest-based advertising, tracking technologies, and how to opt out, please visit http://www.aboutads.info/choices.  You can disable the sharing of your personal information for cross-contextual behavioral advertising or targeted advertising through online tracking technology by clicking on the Cookie Settings link on our Site footer or in the mobile application and disabling all cookies that are not strictly necessary.

81)     Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer.  Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434